UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

JOHNATHAN D. WILLIAMS,

    Petitioner,

v.                                         Case No. 3:16-cv-1230-J-34JRK

SECRETARY, FLORIDA
DEPARTMENT OF CORRECTIONS,
et al.,
    Respondents.

## ORDER

### I. Status

Petitioner Johnathan Williams, an inmate of the Florida penal system, initiated this action on September 22, 2016,[1] by filing a Petition for Writ of Habeas Corpus under 28 U.S.C. § 2254 (Petition; Doc. 1). In the Petition, Williams challenges a 2015 state court (Clay County, Florida) judgment of conviction for driving under the influence (DUI), driving on a suspended license, and refusal to submit to a breath test. Williams raises two grounds for relief. See Petition at 5-7.[2] Respondents have submitted a memorandum in opposition to the Petition. See Answer in Response to Order to Show Cause (Response; Doc. 25) with exhibits (Resp. Ex.). On June 29, 2017, Williams submitted a brief in reply. (Reply; Doc. 27). This case is ripe for review.

---

[1] See Houston v. Lack, 487 U.S. 266, 276 (1988) (mailbox rule).
[2] For purposes of reference, the Court will cite the page number assigned by the Court's electronic docketing system.

## II. Relevant Procedural History

On October 13, 2015, Williams entered into a negotiated plea of guilty to DUI, fourth offense, (count one), driving while license suspended or revoked – habitual offender (count two), and refusing to submit to a DUI test (count three). Resp. Ex. A at 65-66. The same day, the circuit court sentenced Williams to a term of incarceration of three and half years in prison as to counts one and two, and a term of incarceration of 184 days in jail as to count three. Id. at 67-73. The circuit court ordered each sentence to run concurrently to the others. Id. at 73. Williams did not appeal. Id. at 60.

On December 31, 2015, Williams filed a pro se motion for postconviction relief pursuant to Florida Rule of Criminal Procedure 3.850 (Rule 3.850 Motion). Id. at 1-23. Williams raised the following two arguments in his Rule 3.850 Motion: counsel was ineffective for failing to file a motion to suppress (ground one); and police violated his Fourth Amendment rights when they illegally seized him and searched his cellphone. Id. On March 14, 2016, the circuit court denied the Rule 3.850 Motion. Id. at 60-63. On June 28, 2016, Florida's First District Court of Appeal (First DCA) per curiam affirmed the denial without a written opinion. Resp. Ex. C. Williams filed a motion for rehearing on July 11, 2016, which the First DCA denied on August 26, 2016. Resp. Ex. D. The First DCA issued the Mandate on September 13, 2016. Resp. Ex. E.

## III. One-Year Limitations Period

The Petition was timely filed within the one-year limitations period. See 28 U.S.C. § 2244(d).

## IV. Evidentiary Hearing

In a habeas corpus proceeding, the burden is on the petitioner to establish the need for a federal evidentiary hearing. See Chavez v. Sec'y, Fla. Dep't of Corr., 647 F.3d 1057, 1060 (11th Cir. 2011). "In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." Schriro v. Landrigan, 550 U.S. 465, 474 (2007); Jones v. Sec'y, Fla. Dep't of Corr., 834 F.3d 1299, 1318-19 (11th Cir. 2016), cert. denied, 137 S. Ct. 2245 (2017). "It follows that if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." Schriro, 550 U.S. at 474. The pertinent facts of this case are fully developed in the record before the Court. Because the Court can "adequately assess [Williams'] claim[s] without further factual development," Turner v. Crosby, 339 F.3d 1247, 1275 (11th Cir. 2003), an evidentiary hearing will not be conducted.

## V. Governing Legal Principles

### A. Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) governs a state prisoner's federal petition for habeas corpus. See Ledford v. Warden, Ga. Diagnostic & Classification Prison, 818 F.3d 600, 642 (11th Cir. 2016), cert. denied, 137 S. Ct. 1432 (2017). "'The purpose of AEDPA is to ensure that federal habeas relief functions as a guard against extreme malfunctions in the state criminal justice systems, and not as a means of error correction.'" Id. (quoting Greene v. Fisher, 565 U.S. 34, 38 (2011) (quotation marks omitted)). As such, federal habeas review of final state court

decisions is "'greatly circumscribed' and 'highly deferential.'" Id. (quoting Hill v. Humphrey, 662 F.3d 1335, 1343 (11th Cir. 2011) (quotation marks omitted)).

The first task of the federal habeas court is to identify the last state court decision, if any, that adjudicated the claim on the merits. See Marshall v. Sec'y, Fla. Dep't of Corr., 828 F.3d 1277, 1285 (11th Cir. 2016). The state court need not issue a written opinion explaining its rationale in order for the state court's decision to qualify as an adjudication on the merits. See Harrington v. Richter, 562 U.S. 86, 100 (2011). Where the state court's adjudication on the merits is unaccompanied by an explanation, the United States Supreme Court recently stated:

> [T]he federal court should "look through" the unexplained decision to the last related state-court decision that does provide a relevant rationale. It should then presume that the unexplained decision adopted the same reasoning.

Wilson v. Sellers, 138 S. Ct. 1188, 1192 (2018). The presumption may be rebutted by showing that the higher state court's adjudication most likely relied on different grounds than the lower state court's reasoned decision, such as persuasive alternative grounds that were briefed or argued to the higher court or obvious in the record it reviewed. Id. at 1192, 1196.

If the claim was "adjudicated on the merits" in state court, § 2254(d) bars relitigation of the claim unless the state court's decision (1) "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); Richter, 562 U.S. at 97-98. The Eleventh Circuit describes the limited scope of federal review pursuant to § 2254 as follows:

4

> First, § 2254(d)(1) provides for federal review for claims of state courts' erroneous legal conclusions. As explained by the Supreme Court in Williams v. Taylor, 529 U.S. 362, 120 S. Ct. 1495, 146 L.Ed.2d 389 (2000), § 2254(d)(1) consists of two distinct clauses: a "contrary to" clause and an "unreasonable application" clause. The "contrary to" clause allows for relief only "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." Id. at 413, 120 S. Ct. at 1523 (plurality opinion). The "unreasonable application" clause allows for relief only "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id.
>
> Second, § 2254(d)(2) provides for federal review for claims of state courts' erroneous factual determinations. Section 2254(d)(2) allows federal courts to grant relief only if the state court's denial of the petitioner's claim "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). The Supreme Court has not yet defined § 2254(d)(2)'s "precise relationship" to § 2254(e)(1), which imposes a burden on the petitioner to rebut the state court's factual findings "by clear and convincing evidence." See Burt v. Titlow, 571 U.S. ---, ---, 134 S. Ct. 10, 15, 187 L.Ed.2d 348 (2013); accord Brumfield v. Cain, 576 U.S. ---, ---, 135 S. Ct. 2269, 2282, 192 L.Ed.2d 356 (2015). Whatever that "precise relationship" may be, "'a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance.'"[3] Titlow, 571 U.S. at ---, 134 S. Ct. at 15 (quoting Wood v. Allen, 558 U.S. 290, 301, 130 S. Ct. 841, 849, 175 L.Ed.2d 738 (2010)).

Tharpe v. Warden, 834 F.3d 1323, 1337 (11th Cir. 2016), cert. denied, 137 S. Ct. 2298

(2017). Also, deferential review under § 2254(d) generally is limited to the record that was

---

[3] The Eleventh Circuit has described the interaction between § 2254(d)(2) and § 2254(e)(1) as "somewhat murky." Clark v. Att'y Gen., Fla., 821 F.3d 1270, 1286 n.3 (11th Cir. 2016), cert. denied, 137 S. Ct. 1103 (2017).

5

before the state court that adjudicated the claim on the merits. See Cullen v. Pinholster, 563 U.S. 170, 182 (2011) (stating the language in § 2254(d)(1)'s "requires an examination of the state-court decision at the time it was made").

Thus, "AEDPA erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court." Burt v. Titlow, 134 S. Ct. 10, 16 (2013). "Federal courts may grant habeas relief only when a state court blundered in a manner so 'well understood and comprehended in existing law' and 'was so lacking in justification' that 'there is no possibility fairminded jurists could disagree.'" Tharpe, 834 F.3d at 1338 (quoting Richter, 562 U.S. at 102-03). This standard is "meant to be" a "difficult" one to meet. Richter, 562 U.S. at 102. Thus, to the extent that the petitioner's claims were adjudicated on the merits in the state courts, they must be evaluated under 28 U.S.C. § 2254(d).

### B. Exhaustion/Procedural Default

There are prerequisites to federal habeas review. Before bringing a § 2254 habeas action in federal court, a petitioner must exhaust all state court remedies that are available for challenging his state conviction. See 28 U.S.C. § 2254(b)(1)(A). To exhaust state remedies, the petitioner must "fairly present[]" every issue raised in his federal petition to the state's highest court, either on direct appeal or on collateral review. Castille v. Peoples, 489 U.S. 346, 351 (1989) (emphasis omitted). Thus, to properly exhaust a claim, "state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999).

In addressing exhaustion, the United States Supreme Court explained:

> Before seeking a federal writ of habeas corpus, a state prisoner must exhaust available state remedies, 28 U.S.C. § 2254(b)(1), thereby giving the State the "''opportunity to pass upon and correct" alleged violations of its prisoners' federal rights.'" Duncan v. Henry, 513 U.S. 364, 365, 115 S. Ct. 887, 130 L.Ed.2d 865 (1995) (per curiam) (quoting Picard v. Connor, 404 U.S. 270, 275, 92 S. Ct. 509, 30 L.Ed.2d 438 (1971)). To provide the State with the necessary "opportunity," the prisoner must "fairly present" his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim. Duncan, supra, at 365-366, 115 S. Ct. 887; O'Sullivan v. Boerckel, 526 U.S. 838, 845, 119 S. Ct. 1728, 144 L.Ed.2d 1 (1999).

Baldwin v. Reese, 541 U.S. 27, 29 (2004).

A state prisoner's failure to properly exhaust available state remedies results in a procedural default which raises a potential bar to federal habeas review. The United States Supreme Court has explained the doctrine of procedural default as follows:

> Federal habeas courts reviewing the constitutionality of a state prisoner's conviction and sentence are guided by rules designed to ensure that state-court judgments are accorded the finality and respect necessary to preserve the integrity of legal proceedings within our system of federalism. These rules include the doctrine of procedural default, under which a federal court will not review the merits of claims, including constitutional claims, that a state court declined to hear because the prisoner failed to abide by a state procedural rule. See, e.g., Coleman,[4] supra, at 747–748, 111 S. Ct. 2546; Sykes,[5] supra, at 84–85, 97 S. Ct. 2497. A state court's invocation of a procedural rule to deny a prisoner's claims precludes federal review of the claims if, among other requisites, the state procedural rule is a nonfederal ground adequate to support the judgment and the rule is firmly established and consistently followed. See, e.g., Walker v. Martin, 562 U.S. --, --, 131 S. Ct. 1120, 1127–1128, 179 L.Ed.2d 62 (2011); Beard v. Kindler, 558 U.S. --, --, 130 S. Ct. 612, 617–618, 175 L.Ed.2d 417 (2009). The doctrine barring

---

[4] Coleman v. Thompson, 501 U.S. 722 (1991).
[5] Wainwright v. Sykes, 433 U.S. 72 (1977).

7

> procedurally defaulted claims from being heard is not without exceptions. A prisoner may obtain federal review of a defaulted claim by showing cause for the default and prejudice from a violation of federal law. See Coleman, 501 U.S., at 750, 111 S. Ct. 2546.

Martinez v. Ryan, 132 S. Ct. 1309, 1316 (2012). Thus, procedural defaults may be excused under certain circumstances. Notwithstanding that a claim has been procedurally defaulted, a federal court may still consider the claim if a state habeas petitioner can show either (1) cause for and actual prejudice from the default; or (2) a fundamental miscarriage of justice. Ward v. Hall, 592 F.3d 1144, 1157 (11th Cir. 2010). In order for a petitioner to establish cause,

> the procedural default "must result from some objective factor external to the defense that prevented [him] from raising the claim and which cannot be fairly attributable to his own conduct." McCoy v. Newsome, 953 F.2d 1252, 1258 (11th Cir. 1992) (quoting Carrier, 477 U.S. at 488, 106 S. Ct. 2639).[6] Under the prejudice prong, [a petitioner] must show that "the errors at trial actually and substantially disadvantaged his defense so that he was denied fundamental fairness." Id. at 1261 (quoting Carrier, 477 U.S. at 494, 106 S. Ct. 2639).

Wright v. Hopper, 169 F.3d 695, 706 (11th Cir. 1999).

In the absence of a showing of cause and prejudice, a petitioner may receive consideration on the merits of a procedurally defaulted claim if the petitioner can establish that a fundamental miscarriage of justice, the continued incarceration of one who is actually innocent, otherwise would result. The Eleventh Circuit has explained:

> [I]f a petitioner cannot show cause and prejudice, there remains yet another avenue for him to receive consideration on the merits of his procedurally defaulted claim. "[I]n an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default."

---

[6] Murray v. Carrier, 477 U.S. 478 (1986).

8

> Carrier, 477 U.S. at 496, 106 S. Ct. at 2649. "This exception is exceedingly narrow in scope," however, and requires proof of actual innocence, not just legal innocence. Johnson v. Alabama, 256 F.3d 1156, 1171 (11th Cir. 2001).

Ward, 592 F.3d at 1157. "To meet this standard, a petitioner must 'show that it is more likely than not that no reasonable juror would have convicted him' of the underlying offense." Johnson v. Alabama, 256 F.3d 1156, 1171 (11th Cir. 2001) (quoting Schlup v. Delo, 513 U.S. 298, 327 (1995)). Additionally, "'[t]o be credible,' a claim of actual innocence must be based on reliable evidence not presented at trial." Calderon v. Thompson, 523 U.S. 538, 559 (1998) (quoting Schlup, 513 U.S. at 324). With the rarity of such evidence, in most cases, allegations of actual innocence are ultimately summarily rejected. Schlup, 513 U.S. at 324.

### C. Ineffective Assistance of Trial Counsel

"The Sixth Amendment guarantees criminal defendants the effective assistance of counsel. That right is denied when a defense attorney's performance falls below an objective standard of reasonableness and thereby prejudices the defense." Yarborough v. Gentry, 540 U.S. 1, 5 (2003) (per curiam) (citing Wiggins v. Smith, 539 U.S. 510, 521 (2003), and Strickland v. Washington, 466 U.S. 668, 687 (1984)).

> To establish deficient performance, a person challenging a conviction must show that "counsel's representation fell below an objective standard of reasonableness." [Strickland,] 466 U.S. at 688, 104 S. Ct. 2052. A court considering a claim of ineffective assistance must apply a "strong presumption" that counsel's representation was within the "wide range" of reasonable professional assistance. Id., at 689, 104 S. Ct. 2052. The challenger's burden is to show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Id., at 687, 104 S. Ct. 2052.

9

> With respect to prejudice, a challenger must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id., at 694, 104 S. Ct. 2052. It is not enough "to show that the errors had some conceivable effect on the outcome of the proceeding." Id., at 693, 104 S. Ct. 2052. Counsel's errors must be "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Id., at 687, 104 S. Ct. 2052.

Richter, 562 U.S. at 104. The Eleventh Circuit has recognized "the absence of any iron-clad rule requiring a court to tackle one prong of the Strickland test before the other." Ward, 592 F.3d at 1163. Since both prongs of the two-part Strickland test must be satisfied to show a Sixth Amendment violation, "a court need not address the performance prong if the petitioner cannot meet the prejudice prong, and vice-versa." Id. (citing Holladay v. Haley, 209 F.3d 1243, 1248 (11th Cir. 2000)). As stated in Strickland: "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." Strickland, 466 U.S. at 697.

A state court's adjudication of an ineffectiveness claim is accorded great deference.

> "[T]he standard for judging counsel's representation is a most deferential one." Richter, - U.S. at -, 131 S. Ct. at 788. But "[e]stablishing that a state court's application of Strickland was unreasonable under § 2254(d) is all the more difficult. The standards created by Strickland and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so." Id. (citations and quotation marks omitted). "The question is not whether a federal court believes the state court's determination under the Strickland standard was incorrect but whether that determination was unreasonable - a substantially higher threshold." Knowles v. Mirzayance, 556 U.S. 111, 123, 129 S. Ct. 1411, 1420, 173 L.Ed.2d 251 (2009) (quotation marks omitted). If there is "any reasonable

10

> argument that counsel satisfied Strickland's deferential standard," then a federal court may not disturb a state-court decision denying the claim. Richter, - U.S. at -, 131 S. Ct. at 788.

Hittson v. GDCP Warden, 759 F.3d 1210, 1248 (11th Cir. 2014); Knowles v. Mirzayance, 556 U.S. 111, 123 (2009). In other words, "[i]n addition to the deference to counsel's performance mandated by Strickland, the AEDPA adds another layer of deference--this one to a state court's decision--when we are considering whether to grant federal habeas relief from a state court's decision." Rutherford v. Crosby, 385 F.3d 1300, 1309 (11th Cir. 2004). As such, "[s]urmounting Strickland's high bar is never an easy task." Padilla v. Kentucky, 559 U.S. 356, 371 (2010).

## VI. Findings of Fact and Conclusions of Law

### A. Ground One

Williams alleges that his attorney was ineffective because he failed to file a motion to suppress. Petition at 5. According to Williams, police conducted a traffic stop on his vehicle because he was weaving between lanes; however, he claims this is false. Id. Additionally, Williams contends that during the stop, police searched the contents of his cellphone, including text messages, without first obtaining a warrant. Id. Based on these facts, Williams asserts his counsel should have moved to suppress all evidence derived from the traffic stop. Id.

Williams raised a similar claim as ground one of his Rule 3.850 Motion. Resp. Ex. A at 5-8. In denying this claim, the circuit court stated:

> At the plea hearing, the following exchange occurred:
>
> THE COURT: Do you understand that by pleading guilty you give up the right to have a trial, the right to call and confront witnesses at

that trial, the right to remain silent, the right to appeal. You also give up the right for your attorney to file any motions challenging either the stop of your car which resulted in your arrest for DUI, or anything else. There have been no motions filed. Were there any motions that you anticipated your attorney would file in this case?

THE DEFENDANT: No, sir.

THE COURT: You're not telling me today that you believe he has not represented you well enough because he hasn't filed motions?

THE DEFENDANT: No. No, sir.

THE COURT: Do you understand that the State Attorney takes a position that if you file motions in a case then all negotiations are off, which means they don't negotiate and leaves [sic] it up to me; however, since you have not filed any motions, your attorney knew that going in. He's negotiated a three-and-a-half year sentence for you and that is what you are accepting today. Is that my (sic) understanding?

THE DEFENDANT: Yes. Sir.

THE COURT: Okay. Have you had enough time to speak with Mr. Falcon about what you're doing here today?

THE DEFENDANT: Yes, sir.

THE COURT: This is the second time I've seen you this morning. Mr. Falcon had asked me especially to ask you to come back out and see if we could get through this plea that we couldn't get through before. Is there anything else you need to discuss with him before we proceed?

THE DEFENDANT: No, sir.

. . . .

> THE COURT: You're going to prison. There is no furlough. I wouldn't feel comfortable with you being out awaiting to go to prison. Are you satisfied with Mr. Falcon's legal services in working this deal out for you?
>
> THE DEFENDANT: Yes, sir.
>
> . . . .
>
> THE COURT: I will accept those facts as sufficient to maintain the plea. Is there anything else you want to say Mr. Williams before I impose the negotiated sentence?
>
> THE DEFENDANT: No, sir.
>
> Additionally, Mr. Falcon acknowledged that if he had grounds to file a motion challenging Defendant's traffic stop he would have filed it.
>
> Based on the record, Ground One is refuted. Despite his reservations about the reasonableness of his traffic stop, Defendant did not anticipate that his attorney would file any motions.[7] Further, in spite of the fact that counsel did not file any motions, Defendant was satisfied with counsel's legal representation.
>
> Therefore, the Court finds that Defendant has failed to demonstrate that counsel was ineffective. Defendant is not entitled to relief on Ground One.

Id. at 60-63 (record citations omitted). The First DCA per curiam affirmed the denial of this claim. Resp. Exs. C; E.

To the extent that the First DCA decided the claim on the merits,[8] the Court will address the claim in accordance with the deferential standard for federal court review of

---

[7] The Court notes that the alleged seizure of Defendant's cellular phone, whether proper or improper, was immaterial in this case.

[8] In looking through the appellate court's per curiam affirmance to the circuit court's "relevant rationale," the Court presumes that the appellate court "adopted the same reasoning." Wilson, 138 S. Ct. at 1194.

state court adjudications. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Williams is not entitled to relief on the basis of this claim.

Nevertheless, even if the state appellate court's adjudication of the claim is not entitled to deference, Williams' claim in Ground One is without merit. As an initial matter, the Court finds that Williams has failed to adequately plead prejudice because he does not allege that but for counsel's alleged deficiencies, he would have proceeded to trial instead of accepting the plea. See Hill v. Lockhart, 474 U.S. 52, 60 (1985) (holding that the district court did not err in denying petitioner's federal habeas petition where "[p]etitioner did not allege in his habeas petition that, had counsel correctly informed him about his parole eligibility date, he would have pleaded not guilty and insisted on going to trial."). Accordingly, Williams has failed to establish the requisite prejudice needed to receive federal habeas relief on a claim that he involuntarily entered a plea based on ineffective assistance of counsel. Id.

In any event, the United States Supreme Court has noted that "[s]olemn declarations in open court carry a strong presumption of verity." Blackledge v. Allison, 431 U.S. 63, 74 (1977). Under Florida law, "[a] rule 3.850 motion cannot be used to go behind representations the defendant made to the trial court, and the court may summarily deny post-conviction claims that are refuted by such representations." Kelley v. State, 109 So. 3d 811, 812-13 (Fla. 1st DCA 2013). By entering a guilty plea, a

defendant waives any right to have his or her counsel investigate or put forward a defense. Smith v. State, 41 So. 3d 1037, 1040 (Fla. 1st DCA 2010) (citing Davis v. State, 938 So. 2d 555, 557 (Fla. 1st DCA 2006)). Similarly, "[w]here a defendant enters a plea and swears that he is satisfied with his counsel's advice, he may not later attack counsel's effectiveness for failure to investigate or defend the charge." Id. Notably, a defendant "cannot assert that his plea was not knowingly and voluntarily entered where he concedes he was well aware of his counsel's deficiencies prior to entry of his plea." Davis, 938 So. 2d at 557.

During the plea hearing, Williams spoke up about his concerns regarding the constitutionality of the traffic stop in his case. Resp. Ex. A at 7-12. Williams' concerns ultimately led the circuit court to pass his case so Williams could further discuss the matter with his attorney. Id. at 9. Once re-called, Williams agreed to proceed with the negotiated plea and the circuit court held a plea colloquy with Williams. Id. at 10-17. During the plea colloquy, Williams made sworn representations to the circuit court that no one promised him anything or coerced him into entering the plea. Id. at 13. The circuit court then specifically asked Williams if he understood he was giving up his right to file any motions challenging the legality of the traffic stop, and Williams stated that he understood. Id. at 13-14. Additionally, Williams affirmatively stated he had enough time to talk with his attorney and that he was satisfied with his attorney's representation. Id. at 14-15.

Based on these sworn representations, Williams cannot assert that his plea was involuntary where he concedes to the circuit court he was aware of counsel's failure to file a motion to suppress prior to entry of the plea. See Davis, 938 So. 2d at 557. Simply put, by entering his plea, Williams waived his right to have his attorney investigate or put

forward a defense. See Smith, 41 So. 3d at 1040. Additionally, Williams cannot go behind his sworn representations that he specifically understood he was waiving his right to file a motion to suppress. See Kelley, 109 So. 3d at 812-13. Moreover, Williams' sworn statements during the plea colloquy regarding his satisfaction with his attorney, forecloses his right to collaterally attack counsel's effectiveness regarding investigating and defending his case. See Smith, 41 So. 3d at 1040.

Lastly, even assuming the plea colloquy did not refute this claim, Williams would not be entitled to relief. So long as an officer has probable cause to believe that a traffic violation occurred, the actual motivations of the individual officer involved would not invalidate an objectively justifiable stop under the Fourth Amendment. Whren v. United States, 517 U.S. 806 (1996); see also United States v. Holloman, 113 F.3d 192, 194 (11th Cir. 1997) ("[T]he constitutional reasonableness of a traffic stop must be determined irrespective of intent, whether of the particular officers involved or of the theoretical reasonable officer.") (internal quotation marks omitted). The record reflects that police conducted a traffic stop of Williams' vehicle because he was failing to maintain his lane, weaving between two lanes at least three times, which is a violation of Florida law. Resp. Ex. J; see also § 316.089, Fla. Stat. Accordingly, as there was an objectively justifiable reason for the stop, a violation of a Florida traffic law, the traffic stop was not unconstitutional. See Whren, 517 U.S. 806. Moreover, no evidence from Williams' cellphone was used to prosecute this case. As such, any motion to suppress would have been without merit. Counsel cannot be deemed deficient for failing to file a motion that would have been unsuccessful. See Diaz v. Sec'y for the Dep't of Corr., 402 F.3d 1136, 1142 (11th Cir. 2005) (holding counsel cannot be ineffective for failing to raise a meritless

argument); Bolender v. Singletary, 16 F.3d 1547, 1573 (11th Cir. 1994) (noting that "it is axiomatic that the failure to raise nonmeritorious issues does not constitute ineffective assistance."). For the above stated reasons, the relief Williams seeks in Ground One is due to be denied.

### B. Ground Two

In Ground Two, Williams avers that police violated his Fourth Amendment rights by illegally seizing him during a traffic stop and illegally searching his cellphone. Petition at 6. Williams claims the search and seizure was illegal for the same reasons he expressed in Ground One. Id.

The United States Supreme Court has held that "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." Stone v. Powell, 428 U.S. 465, 494 (1976). The Fifth Circuit has explained that:

> An "opportunity for full and fair litigation" means just that: an opportunity. If a state provides the processes whereby a defendant can obtain full and fair litigation of a fourth amendment claim, Stone v. Powell bars federal habeas corpus consideration of that claim whether or not the defendant employs those processes.

Caver v. State of Ala., 577 F.2d 1188, 1192 (5th Cir. 1978)[9]; see also Lawhorn v. Allen, 519 F.3d 1272, 1288 (11th Cir. 2008). Florida provides an opportunity for the full and fair

---

[9] In Bonner v. City of Prichard, 661 F.2d 1206, 1207 (11th Cir.1981), the Eleventh Circuit adopted as binding precedent decisions of the former Fifth Circuit (including Unit A panel decisions of that circuit) handed down prior to October 1, 1981. W.R. Huff Asset Mgmt. Co., L.L.C. v. Kohlberg, Kravis, Roberts & Co., L.P., 566 F.3d 979, 985 n. 6 (11th Cir. 2009).

litigation of Fourth Amendment claims, see Fla. R. Crim. P. 3.190(g), though Williams never availed himself of this opportunity. As such, the Court cannot review his Fourth Amendment claim. See Stone, 428 U.S. at 494; Carver, 577 F.2d at 1192. Accordingly, relief on the claim in Ground Two is due to be denied.

## VII. Certificate of Appealability
## Pursuant to 28 U.S.C. § 2253(c)(1)

If Williams seeks issuance of a certificate of appealability, the undersigned opines that a certificate of appealability is not warranted. The Court should issue a certificate of appealability only if the petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make this substantial showing, Williams "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further,'" Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)).

Where a district court has rejected a petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. See Slack, 529 U.S. at 484. However, when the district court has rejected a claim on procedural grounds, the petitioner must show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would

find it debatable whether the district court was correct in its procedural ruling." Id. Upon consideration of the record as a whole, the Court will deny a certificate of appealability.

Therefore, it is now

**ORDERED AND ADJUDGED:**

1. The Petition (Doc. 1) is **DENIED**, and this action is **DISMISSED WITH PREJUDICE**.

2. The Clerk of the Court shall enter judgment denying the Petition and dismissing this case with prejudice.

3. If Williams appeals the denial of the Petition, the Court denies a certificate of appealability. Because the Court has determined that a certificate of appealability is not warranted, the Clerk shall terminate from the pending motions report any motion to proceed on appeal as a pauper that may be filed in this case. Such termination shall serve as a denial of the motion.

4. The Clerk of the Court is directed to close this case and terminate any pending motions.

**DONE AND ORDERED** at Jacksonville, Florida, this 3rd day of April, 2019.

*MARCIA MORALES HOWARD*
United States District Judge

Jax-8

C: Johnathan D. Williams
   Jennifer J. Moore, Esq.